IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MEDICAL EDUCATIONAL AND HEALTH SERVICE, INC. <br><br> Debtor | CASE NO.: 10-04905 (BKT) <br><br> CHAPTER 11 |
| MAYAGUEZ MEDICAL CENTER – DR. RAMON EMETERIO BETANCES, INC. <br><br> Plaintiff <br> v. <br> MEDICAL EDUCATIONAL AND HEALTH SERVICE, INC. <br> Defendant | ADVERSARY NO.: 10-00146 (BKT) <br><br> RE: DECLARATORY JUDGMENT, COLLECTION OF MONIES AND INJUNCTIVE RELIEF |

**ANSWER TO THE COMPLAINT**

**TO THE HONORABLE BANKRUPTCY COURT:**

COMES NOW, Medical Educational and Health Service, Inc. (herein after MEDHS or Debtor) through the undersigned counsel and hereby alleges as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Requires no answer from this party inasmuch as it is Plaintiff's characterization of the action and conclusion of law. To any extent that is requires an admission or denial it is denied.

6. Admitted.

7.    Denied.  The agreement in question was between the Municipality and MEDHS.  SISSO only appeared to guarantee the performance of the terms of the contract because it would become sub-lessee, and administrator owing rent to MEDHS, for certain parts of the property.  Since MEDHS would need the product of the sub-lease to comply with its payment obligations to the Municipality, SISSO's guarantee was required in the lease, to the Municipality could have a direct cause of action against SISSO.

8.    Admitted with the clarification included in the above paragraph.  It is further clarified that among the parts of the Hospital not included in the sub-lease agreement between MEDHS and SISSO were those portions leased to Mayaguez Advance Radiotherapy Center (hereinafter MARC).  Also excluded from the sub-lease were the emergency facilities and the parking facilities of the Hospital.

9.    Denied.  It is clarified that the Municipality of Mayaguez sent a letter to MEDHS, attempting to terminate the lease agreement signed on August 27, 2009.  It is further clarified that the reason given for said attempted cancellation was an alleged lack of timely payment of rent.  Said lack of timely payment of rent was false, inasmuch as the Municipality had granted MEDHS and SISSO, as well as SISSO's expected buyer, MMC, a moratorium of rent of six months.[1]

10.    Denied. It is clarified that SISSO, under MMC's control, did send a letter purporting to accept the termination of the first lease agreement in both its

---

[1] See Exhibit 1 to this Answer and "C" of the Contract between MMC and the Municipality of Mayaguez.

2

name and MEDHS's name.  It was not authorized by MEDHS to do so and it could not accept any termination, inasmuch as SISSO was only a guarantor of the first lease agreement and not a party to it.

11. Admitted.  The legal validity of said agreement between MMC and the Municipality of Mayaguez is denied.  It is further alleged that the elements that make said second agreement invalid are contained in the contract itself, as its own annex "C", already included as part of this answer.

12. Admitted.

13. Denied because the transactions that serve as a basis for the notification referred to in paragraph 13 are invalid in law.

14. Admitted.

15. Allegation 15 is a prayer and alleges no facts that can be admitted or denied.  To the extent that it may need to be admitted or denied, it is denied.

16. Allegation 16 is a prayer and alleges no facts that can be admitted or denied.  To the extent that it may need to be admitted or denied, it is denied.

17. Allegation 17 is a prayer and alleges no facts that can be admitted or denied.  To the extent that it may need to be admitted or denied, it is denied.

## AFFIRMATIVE DEFENSES

Defendant/Debtor hereby request that all allegations and exhibits presented in the Verified Complaint filed September 1st, 2010 with Adversary Number 10-00148 (BKT) be made part of this affirmative defenses as if all the allegations and exhibits were textually included as part of this document.  The specific facts and incidents, there alleged and evidenced, provide clear factual

3

basis for the conclusory affirmative defenses included below. We therefore omit, on this document, the factual allegations and limit ourselves to the following conclusory defenses.

All allegations included in this document explicitly and by reference, are to be read together, as one sole document, taken as a whole, all assertions read in the light of each other. The following defenses are applicable.

1. Estoppel
2. Fraud.
3. Payment.
4. Agreement.
5. Accord and satisfaction.
6. Novation of contract.
7. "Exceptio non adimpleti contractus", that is, non-compliance with contract by plaintiff, who assumed SISSO's obligations, permits defendant to withhold compliance with its obligations under the contract, if any.
8. Lack of Privity.

## COUNTERCLAIM

Debtor MEDHS hereby incorporates, by reference, all allegations and evidence included in its Verified Complaint presented September 1st, 2010 with Adversary Number 10-00148 (BKT). Debtor MEDHS request that all said allegations and exhibits be accepted by the Court as part of this document as if they all had been included herein, for all legal purposes.

4

WHEREFORE it is respectfully requested from this Honorable Court that deny Mayaguez Medical Center- Dr. Ramón Emeterio Betances, Inc. requests and allegations except those accepted as true and that it deny all remedies requested by Plaintiff Mayaguez Medical Center- Dr. Ramón Emeterio Betances, Inc. and grant all remedies requested by Debtor MEDHS in its Verified Complaint which we have made part or incorporated as part of this document, by reference, to it and to its exhibits.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 8th day of September, 2010.

I hereby certify that on September 8, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

/S/Rafael González Vélez
Rafael González Vélez
USDC No. 124311
1806 Calle McLeary
Suite 1-B - Ocean Park
San Juan, Puerto Rico 00911
E-mail: rgvlo@prtc.net
Tel. 787-726-8866
Fax 787-726-8877

## Ortiz & Ortiz Law Office, P.L.C.

470 Avenida César L. González, Urbanización Roosevelt, San Juan, PR 00918-2627
Tel. (787) 763-8989   Fax (787) 274-8390
e-mail: ortizortizlaw@prtc.net

**A LA MANO**

28 de diciembre de 2009

Hon. José G. Rodríguez Rodríguez
Alcalde
Municipio de Mayaguez
Mayaguez, Puerto Rico 00680

RE:   Solicitud de Autorización Cambio Control Corporativo

Estimado señor Alcalde:

El suscribiente se dirige a usted en nombre y representación de Mayaguez Medical Center-Dr. Ramón Emeterio Betances, Inc. ("**MMC**").

Mediante acuerdo suscrito en esta misma fecha, <u>el cual acuerdo está condicionado y sujeto a la previa aprobación, por escrito, del Municipio de Mayaguez ("**Municipio**")</u>, el Dr. Orlando Marini Román ha acordado venderle a MMC, todas sus acciones comunes corporativas de Sistemas Integrados de Salud del Sur Oeste, Inc. ("**SISSO**")-(en adelante colectivamente las "**Acciones**").

Los términos, condiciones, precio de compraventa y demás acuerdos llegados entre el Dr. Marini y MMC relacionados a la venta, cesión y traspaso de las Acciones se encuentran descritos y detallados en la carta-contrato fechada 28 de diciembre de 2009; copia de la cual le incluyo y hago formar parte de esta como **Exhibit A**.

Con la compra de las Acciones, MMC asumirá el control corporativo de SISSO y, por consiguiente, el control, operación y administración del Centro Médico de Mayaguez ("**Centro Médico**"), a partir del día 1 de enero del 2010.

Una vez MMC asuma el control corporativo de SISSO procederá a operar y administrar el Centro Médico bajo los mismos términos y condiciones dispuestos en el Contrato para la Operación y Administración del Hospital Dr. Ramón Emeterio Betances del Centro Médico de Mayaguez (en adelante el "**Contrato de Administración**"), suscrito y otorgado en Mayaguez, Puerto Rico, el día 27 de agosto de 2009, en y entre el Municipio, Medical Educational and Health Services, Inc. ("**MEDHS**") y SISSO. MCC se compromete y obliga con el Municipio a dar cumplimiento específico a todas las disposiciones del Contrato de Administración y del Contrato de Arrendamiento suscrito con MEDHS en 1 de septiembre de 2009.

Como parte de la descrita transacción, el Dr. Orestes Castellanos Rodríguez, el Sr. Pedro Montes y el Dr. Orlando Marini Román, estarán renunciando a sus puestos como miembros de la junta de directores de MEDHS y nombraran en su sustitución a aquellas personas a ser designadas por MMC.

-1-

Además de la suma de $5,000,000.00 a ser pagada al Dr. Marini por la adquisición de las Acciones, MMC se propone realizar una inversión inicial de capital en el Centro Médico, dentro de los primeros dieciocho (18) meses de su administración, en la suma aproximada de $6,000,000.00, la cual se desglosa de la siguiente manera: $4,000,000.00 para el establecimiento y operación de una unidad de radio-terapia; $1,000,000.00 para la compra del equipo y maquinaria necesaria para la instalación y operación de un laboratorio cardio-vascular invasivo y la suma de $1,000,000.00 para mejoras a realizarse a la sala de emergencia [mejoras físicas y compra e instalación de nuevos equipos].

Similarmente y dentro de los primeros veinticuatro (24) meses de su administración del Centro Médico, MMC se propone realizar aquellas otras inversiones de capital que resulten pertinentes para llevar a cabo las mejoras necesarias a la planta física del Centro Médico y para adquirir e instalar aquellos modernos equipos y maquinarias, que le permitan operar el mismo como un "hospital general" y que le permitan atraer a nuevos médicos que se obliguen a utilizar las facilidades médico-hospitalarias del Centro Médico para hospitalizar a sus respectivos pacientes; incluyendo el que se instalará un nuevo y moderno laboratorio clínico y se habilitarán por lo menos 200 camas adicionales a las 100 camas actualmente en utilización.

A partir del día 31 de diciembre de 2009, MMC asumirá el pago de la nómina de empleados del Centro Médico y de todas aquellas otras deudas incurridas por SISSO dentro y/o como parte del normal proceder de negocios de su previa operación y administración del Centro Médico.

En adición a la relacionada inversión económica en mejoras de capital al Centro Médico, MMC utilizará una línea de crédito comercial, en la suma de $3,000,000.00, para la operación y administración diaria de los asuntos de negocios del Centro Médico; lo que permitirá y garantizará que todas las futuras obligaciones económicas de SISSO relacionadas a la operación del Centro Médico, incluyendo el pago de la nómina de sus empleados y de los cánones de arrendamiento al Municipio, puedan ser pagadas al vencimiento de las mismas.

Una vez MMC adquiera el control corporativo de SISSO y de MEDHS, causará que SISSO y/o MEDHS proceda(n) a pagar al Municipio, en o antes del transcurso de noventa (90) días, contados a partir de la fecha en que el Municipio expida las autorizaciones objeto de esta carta, la suma de $150,000.00 que actualmente le adeuda MEDHS al Municipio por concepto de cánones de arrendamiento atrasados.

Con el propósito de poder afrontar y disponer responsablemente de todos los compromisos de pagos que actualmente le adeuda SISSO a sus diferentes acreedores, incluyendo al Municipio, mediante la presente se le solicita al Municipio una **moratoria** de seis (6) meses, libre de intereses, del pago de cánones de arrendamiento. En o antes del día 1 de septiembre de 2010, SISSO le pagaría al Municipio, libre de intereses, la totalidad de los cánones de arrendamiento objeto de la moratoria; cuando entonces vendrá también obligada a continuar pagando los cánones de arrendamiento prospectivos en sus fechas de vencimiento según dispuesto en la cláusula número 5.1 del Contrato de Administración.

La meta de MMC, es la de proveerle a los residentes del Municipio de Mayaguez y pueblos limítrofes, un servicio médico-hospitalario completo, de la mejor calidad y excelencia,

al menor costo posible. Una vez MMC obtenga el control corporativo de SISSO y, consecuentemente, el control, operación y administración del Centro Médico, realizará y llevará a cabo, con la mayor diligencia y el más serio compromiso corporativo, todas aquellas inversiones de capital adicional, labores, mejoras a la planta física del Centro Médico y gestiones empresariales en general, que resulten necesarias encaminadas a mejorar y aumentar de manera real, sustancial y palpable, los servicios médico-hospitalarios que ofrece el Centro Médico.

Finalmente, una vez MMC adquiera el control, operación y administración del Centro Médico, realizará y llevará a cabo, a su costo y cargo, con la mayor diligencia posible, todas aquellas labores y gestiones necesarias para dar cumplimiento específico a los hallázgos, recomendaciones y directrices objeto del más reciente informe del Joint Commission, para asegurar la acreditación médica del Centro Médico.

En atención a todo lo anterior y en cumplimiento con las disposiciones de las cláusulas número 11.6 y 11.7 del Contrato de Administración, mediante la presente MMC, MEDHS y SISSO solicitan la autorización del Municipio para la venta, cesión y transferencia de las Acciones. Similarmente, a tenor con las disposiciones de las cláusulas número 5.2 y 14.8, mediante la presente MMC, MEDHS y SISSO solicitan del Municipio autorice la relacionada moratoria al pago de cánones de arrendamiento.

De tener usted cualquier duda, pregunta o sugerencia con relación al contenido de esta carta, por favor no vacile en comunicarse con nosotros a su mejor conveniencia.

Sin otro particular al cual referirme y confiado en que le brindará a este asunto su más pronta atención, quedo de usted,

Cordialmente,

Kermit Ortiz Morales

**CONFORME y AUTORIZADO:**

Hon. José G. Rodríguez Rodríguez, en representación del Municipio de Mayagüez

28-Dic. 2009.
Fecha

-3-

     **[CERTIFIED TRANSLATION]**     gcordero pg 1 of 3     

---

Ortiz & Ortiz Law Office, P.L.C.

470 Cesar Gonzalez Avenue, Roosevelt Urbanization, San Juan, PR 00918-2627
Tel. (787) 763-8989 Fax (787) 274-8390
e-mail: ortizortizlaw@prtc.net

<u>HAND DELIVERED</u>

December 28, 2009

Hon. Jose G. Rodriguez Rodriguez
Mayor
Mayaguez Municipality
Mayaguez, Puerto Rico 00680

RE: Authorization Request Change Corporate Control

Dear Mr. Mayor:

The undersigning addresses you by name and in representation of Dr. Ramon Emeterio Betances, Inc. – Mayaguez Medical Center ("MMC").

By means of this agreement undersigned on this same date, <u>agreement of which is conditioned and subject to the previous agreement, in writing, by the Mayaguez Municipality **("Municipality"),**</u> Dr.Marini Roman has agreed to sell to MMC, all his common corporate shares in "Sistemas Integrados de Salud del Sur Oeste, Inc." **("SISSO")** – (hereon collectively the **("Shares").**

The terms, conditions, sales and purchase price and other agreements arrived at between Dr. Marini and MMC related to the sale, assignment and transfer of the Shares are found described and detailed in the letter-contract dated December 28, 2009; copy of which I enclose and make part of this one as **<u>Exhibit A.</u>**

(Illegible Initials)

With the purchase of the Shares, MMC shall assume corporate control of SISSO and, therefore, the control, operation and administration of the Mayaguez Medical Center **("Medical Center"),** beginning on January 1, 2010.

Once MMC assumes corporate control of SISSO is shall proceed to operate and administrate the Medical Center under the same terms and conditions disposed within the Contract for Operation and Administration of the Mayaguez Medical Center's Dr. Ramon Emeterio Betances Hoispital (hereon the **"Administration Contract"**), undersigned and awarded in Mayaguez, Puerto Rico on the 27th day of August, 2009, at and between the Municipality, Medical Educational and Health Services, Inc. **("MEDHS")** and SISSO. MCC commits and is obliged to the Municipality as to the specific compliance of all the dispositions within the Administration Contract and the Lease Agreement undersigned with MEDHS on September 1, 2009.

As part of the [afore] described transaction, Dr. Orestes Castellanos Rodriguez, Mr. Pedro Montes and Dr. Orlando Marini Roman, will be resigning to their positions as members of the MEDHS Board of Directors and shall nominate in their place those persons to be designated by MMC.

1

In addition to the sum of $5,000,000.00 to be paid to Dr. Marini for the acquisition of the Shares, MMC intends to make an initial capital investment in the Medical Center within the first eighteen (18) months of its administration, for the approximate sum of $6,000.000.00, which is distributed in the following manner: $4,000.000.00 for the establishment and operation of an x-ray therapy unit; $1,000,000.00 for the purchase of the necessary equipment and machinery for the installation and operation of an invasive cardio-vascular laboratory and the sum of $1,000,000.00 for improvements to be made to the emergency room (physical improvements and purchase and installation of new equipment).

Similarly and within the first twenty four (24) months of its administration of the Medical Center, MMC intends to make those other capital investments which result [to be] pertinent for the undergoing of necessary improvements to the Medical Center's facilities and for acquiring and installing such modern equipment and machinery, as to allow it to operate as a "general hospital" and to allow it to attract new physicians obliged to utilize the Medical Center's medical-hospital facilities for hospitalizing their respective patients; including the installation of a new and modern clinical laboratory and at least 200 beds shall be equipped additional to the 100 beds currently in use.

Beginning on December 31, 2009, MMC shall assume payment of the Medical Center's employee payroll and all those other debts incurred by SISSO within and/or as part of the normal business endeavors of the Medical Center's previous operation and administration.

(Illegible Initials) In addition to the financial investment relative to capital improvements to the Medical Center, MMC shall utilize a commercial credit line, in the sum of $3,000,000.00, for the daily operation and administration of the Medical Center's business affairs; thus which shall allow for and guarantee that all SISSO's future financial obligations related to the Medical Center's operation, including the payment of its employees payroll and of the lease payment to the Municipality, be paid when these are due.

Once MMC acquires corporate control of SISSO and of MEDHS, [thus will] cause CISSO and/or MEDHS to proceed with payment to the Municipality, on or before the passing of ninety (90) days, counting beginning on the date in which the Municipality emits the authorizations subject of this letter, the sum of $150,000.00 which MEDHS currently owes the Municipality by concept of the delinquent lease payments.

With the purpose of being able to responsibly cope and dispose for all the commitments for payment currently owed by SISSO to its various creditors, including to the Municipality, the Municipality is hereby requested [to approve] a six (6) months **deferment**, interest free, from lease payments. On or before September 1, 2010, SISSO shall pay the Municipality, interest free, the totality of the lease payments subject to the deferment; when it will also be obliged to continue making the prospective [ensuing] lease payments at their due dates as disposed for in clause number 5.1 of the Administration Contract.

MMC's goal, is to provide the residents of the Mayaguez Municipality and neighboring townships, comprehensive hospital-medical service, of the best quality and excellence,

2

at the lowest possible cost. Once MMC obtains corporate control of SISSO and, consequently, the control, operation and administration of the Medical Center, it shall make and undertake, with the greatest diligence and the most serious corporate commitment, all those additional capital investments, labor, facility improvements to the Medical Center and business endeavors in general, which result to be necessary directed to improving and augmenting in a real, substantial and palpable manner, the hospital-medical services offered by the Medical Center.

Finally, once MMC acquires control, operation and administration of the Medical Center, it shall make and undertake, at its own expense and charge, with the greatest diligence possible, all those endeavors and labor necessary for the specific compliance with the findings, recommendations and directives subject to the most recent report by the Joint Commission, for insuring the medical accreditation of the Medical Center.

With regards to all the afore and in compliance with the dispositions and clauses 11.6 and 11.7 of the Administration Contract, MMC, MEDHS and SISSO hereby request the approval from the Municipality of the deferment related to the lease payments.

Should you have any concern, question or suggestion with regards to the content of this letter, please do not hesitate in contacting us as your utter convenience.

Without any further matter in which to refer and confident that you shall lend this matter your most prompt attention, I remain,

                                              Cordially,
                                              (Illegible Signature)
                                              Kermit Ortiz Morales

AGREED and APPROVED:

(Illegible Signature)                                     (28-Dec. 2009.) [hand scripted]
                                                          Date

**CERTIFICATION BY TRANSLATOR**
**I, Guillermo Cordero, an English – Spanish – French – Italian and Portuguese translator and interpreter, do hereby certify that I have translated the foregoing document and it is a true and accurate translation to the best of my knowledge and abilities.**

_____                       08/23/2010
Guillermo Cordero  `                                 Date

3