IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    :

MEDICAL EDUCATIONAL AND                   :    CASE NO. 10-04905 (BKT)
HEALTH SERVICES, INC.                     :
                                          :
     Debtors                              :
_____       :
                                          :    ADV. NO. 10-0146
MAYAGUEZ MEDICAL CENTER                    :
DR. EMETERIO BETANCES, INC.               :
                                          :
     Plaintiff                            :
                                          :    CHAPTER 11
     vs.                                   :
                                          :
MEDICAL EDUCATIONAL AND                   :
HEALTH SERVICE, INC.                      :
                                          :
     Defendant                            :
                                          :
                                          :
MEDICAL EDUCATIONAL AND                   :
HEALTH SERVICE, INC.                      :
                                          :
     Counter-Claimant                     :
                                          :
     Vs.                                   :
                                          :
MAYAGUEZ MEDICAL CENTER                    :
DR. RAMON E. BETANCES, INC.               :
                                          :
     Counter-Defendant                    :
_____       :

## OPINION AND ORDER

Three different adversary proceedings were filed in 2010[1], amongst and between the parties to this dispute. Given that the two legal cases of Medical Educational and Health

---

[1] **10-146**
Mayaguez Medical Center *vs.* Debtor/Medical Educational and Health Services, Inc.

**10-148**
Debtor/Medical Educational and Health Services, Inc. *vs.* Municipality of Mayaguez; Jose Guillermo Rodriguez; Marisela Mora Gonzalez; Dr. Orlando Marini; Jose Quiros; Mary Doe Quiros; Sistemas Integrados de Salud del Sur Oeste, Inc.; Mayaguez Medical Center; Manati Medical Center;

**10-150**
Mayaguez Medical Center *vs.* Debtor/Mayaguez Advanced Radiotherapy Center

Service, Inc. [hereinafter "MEDHS"] and Mayaguez Advanced Radiotherapy Center [hereinafter "MARC"], as well as the adversaries, were all interrelated, the Court determined that discovery in these matters would be conducted jointly. In Adversary Proceedings numbered 10-00150 and 10-00146, the Court denied motions for summary judgment because it found that there existed material facts in dispute thereby requiring a trial. Specifically, the disputed material fact was whether the termination of the August 27, 2009, Agreement for the Operation and Administration of the Hospital Ramón E. Betances, Mayagüez Medical Center [hereinafter "Contract"] between the Municipality of Mayaguez [hereinafter "Municipality"] and MEDHS was procedurally, contractually and legally valid. The Court concluded that this was a material fact in all three adversary proceedings. Therefore, a trial was scheduled and held in February 2012.

## I. FINDINGS OF FACT

After nine (9) days of testimony and the submission of documentary evidence from all parties, the following are the pertinent facts that were established:

1. On August 27, 2009, MEDHS and the Municipality entered into the Contract.

2. Sistemas Integrados de Salud del Sur-Oeste, Inc. [hereinafter "SISSO"], a for-profit corporation, guaranteed the performance of MEDHS' obligations under the Contract.

3. The Municipality delivered possession of the Mayaguez Medical Center Hospital [hereinafter "Hospital"] to MEDHS on August 31, 2009.

4. Pursuant to a Sublease Agreement between MEDHS and SISSO signed on September 1, 2009, the latter became administrator and operator of most of the Hospital.

5. MEDHS and SISSO entered into an informal and temporal agreement allowing SISSO to pay the rent due directly to the Municipality.

6.      At the time when MEDHS and SISSO entered and took over the administration and operation of the Hospital, two of the six (6) floors were not income-generating due to their physical condition.

7.      At no time did MEDHS and/or SISSO request that the Contract be terminated or amended.

8.      During the first two months of the Contract, September 2009 and October 2009, MEDHS and SISSO paid the monthly rent obligation to the Municipality.

9.      During the first months of the Contract, MEDHS contacted the Municipality on several different occasions and met with its representatives in order to discuss possible resolutions to the problems caused by the unusable floors, among other matters.

10.     On November 6, 2009, representatives of the Municipality, MEDHS and SISSO held a meeting and according to the testimony of both Dr. Orestes Castellanos and Dr. Orlando Marini, the Municipality orally agreed to a moratorium of the rent effective immediately.

11.     The rent payment for the month of November 2009, from SISSO to the Municipality, bounced twice, and then a "stop payment" was placed by SISSO on the check. Dr. Marini testified that the "stop payment" was requested due to the fact that it was his understanding that the rent moratorium had been granted which covered the rent for the month of November 2009.

12.     On December 8, 2009, MEDHS was notified in writing of their failure to comply with their obligation under the Contract to pay the rent for the month of November 2009, and were given fifteen (15) days to cure the same.  The letter cited Article 5.3 of the Contract and stated that the letter served as the notification required under that section.

13.     The December 8, 2009 letter was not sent via certified mail as required under Article 5.3 of the Contract, nor was it mailed to the correct address as that was set forth in the Contract.

14. On December 28, 2009, Kermit Ortiz, the attorney for Mayaguez Medical Center-Dr. Ramon Emeterio Betances, Inc. [hereinafter "MMC"] sent a letter to the Mayor of Mayaguez, which set out certain terms and conditions for the purchase of SISSO stock. In that letter, Mr. Ortiz specifically requested a rent moratorium for six months on behalf of MMC, MEDHS and SISSO. The letter shows the signature of the Mayor "Agreeing and Authorizing" the requests made therein.

15. On January 14, 2010, MEDHS received a letter from Cesar R. Miranda, attorney for the Municipality, stating that MEDHS and SISSO were in breach ("incumplimiento") of the Contract and that the Municipality was going to act accordingly. Mr. Cesar Miranda testified that in his opinion, this letter did not comply with the provisions of the Contract with regards to notification of a breach under Articles 5 or 10.

16. On January 28, 2010, the Mayor of Mayaguez sent a letter to MEDHS and SISSO in an effort to terminate the Contract due to several breaches thereof, specifically failure to comply with Articles 5.3 (payment of rent) 6.2.2 (payment of utilities) 8.5 (a)1 and 8.5 (a) 2 (capital investment and line of credit) and Article 9 (payment bond and insurance).

17. The January 28, 2010 termination letter from the Mayor did not comply with the address requirement stated in Article 14.2 of the Contract.

18. It was undisputed that the alleged breaches as to Articles 6.2.2 (payment of utilities) 8.5 (a)1 and 8.5 (a) 2 (capital investment and line of credit) and Article 9 of the Contract (payment bond and insurance) mentioned in the January 28, 2010 letter, were not previously notified in writing to MEDHS/SISSO.

19. On January 29, 2010, the Municipality entered into a new contract for the administration and operation of the Hospital with MMC.

**II.   CONCLUSIONS OF LAW**

Under Puerto Rico law, when the terms of the contract are clear, the literal terms of the same must be followed and honored by courts of law. Art. 1233, Puerto Rico Civil Code, 31 PR

Laws. Annot. § 3471. See also Marina Ind., Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 72 (1983); Fernández-Fernández v. Municipality of Bayamón, 942 F. Supp. 89, 94 (D.P.R. 1996). Article 1042 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2992 states that obligations are created by law, by contracts, and quasi contracts, and by illicit acts and omissions in which a kind of fault or negligence occurs. Obligations arising from law are not presumed, and the provisions of the laws, which may have established them, shall govern them. Article 1043 of the Civil Code, 31 L.P.R.A. § 2993. It is for this reason that Courts may not relieve a party of its obligations to do whatever it was agreed to do by contract, provided said contract is legal, valid and without defect. Cerveceria Corona v. Commonwealth Insurance Co.,115 D.P.R. 342 (1986).

Article 1210 of the Civil Code establishes that "[c]ontracts are perfected by mere consent, and from that time are binding, not only in regard to the fulfillment of what has been expressly stipulated, but with regard to all consequences which according to their character, are in accordance with good faith, use, and law." 31 L.P.R.A. § 3375. In order for a contract to be consummated (contract construction), there needs to exist, a consent, a cause, and a certain object that is a material part of the contract. PREPA v. Action Refund, 515 F.3d 57, 63 (1st Cir. 2008), citing 31 L.P.R.A. § 3391. If any of these elements are not part of the process or the contract itself, a contract will not exist. On the other hand, once all these elements are present, an obligation will be established between all the parties that take part in the contract. 31 L.P.R.A. § 2992. These obligations will have the power of the law between the parties. 31 L.P.R.A. § 2994.

A contract is in existence between two parties when the following conditions are met (1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause for the obligation, which may be established. See Article 1213 of the Civil Code, 31 L.P.R.A. § 3391. Once the essential conditions required for their validity exist, contracts shall be binding between the parties. See Article 1230, 31 L.P.R.A. § 3451. Parties are free to accord and contract all that they deem appropriate as long as it is not against the law,

morals or public order. Vélez López v. Izquierdo Stella, 162 D.P.R. 88 (2004); Article 1207 of Puerto Rico Civil Code, 31 L.P.R.A. § 3372. Article 1044 of the Civil Code of Puerto Rico, 31 L.P.R.A. §2994 states that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."

Therefore, the contractual provisions of the Contract between MEDHS and the Municipality defined and controlled the legal relationship between these two parties. Here, the Contract executed between the Municipality and MEDHS includes clear, specific, and unambiguous provisions regarding the procedure to be followed in case of default in rent payments, and in order to terminate the Contract for default in payment of monies owed to the Municipality by MEDHS. Article 5.3 of Contract specifically requires notification to MEDHS, in writing, sent via certified mail, to a certain address that is stated specifically thereat, in the event of noncompliance with Articles 5.1 and 5.2. Upon receipt of this notification, MEDHS would have fifteen (15) days to cure the noticed default .

The December 8, 2009 letter did not comply with Article 5.3 of the Contract because it was not sent via certified mail, and was not sent to the correct address as it was set forth in the Contract. The January 14, 2010 letter did not comply with Article 5.3 or 14.2 because it was not sent to the correct address that was specified in the Contract. The January 28, 2010 letter did not comply with Article 14.2, because it was sent to a different address from the one specified in the Contract.

Article 10.1(a) of the Contract allowed MEDHS thirty (30) days to cure a noncompliance with regards to payment of rent, following written notification by the Municipality. However, neither the December 8, 2009 letter nor the January 14, 2010 letter mentioned the Article 10.1(a) time period. Three different explanations were offered by the parties and their witnesses as to the difference between the fifteen (15) days notice requirement stated in Article 5.3 and the thirty (30) days notice requirement stated in Article 10.1(a). For purposes of this Opinion, the correct interpretation of the clauses related to the time frames provided in Articles 5 and 10 is

irrelevant.

In their February 23, 2012 motion to dismiss (Case No. 10-00150, Dkt. No. 100), MMC/SISSO cited  the First Circuit case of University Emergency Medical Foundation v. Rapier Investments, LTD, 197 F.3d 18, 22 (1st Cir. 1999). In that case, the court determined that a termination notice that was mailed to an incorrect address and/or where the form of the mailing  was technically defective  was still valid so long as it  was actually received by the other party to the contract. Therefore, MMC/SISSO argues that applying the holding of the University Emergency case to the case at bar,  if in  fact the notice of default was actually received by MEDHS, any defect as to a wrong address and/or the manner in which the mailing was accomplished, would be inconsequential because the spirit of the notice requirement was complied with. This Court disagrees with that argument because the ruling in the University Emergency can be distinguished.

The critical question raised in the University Emergency case is whether the parties intended the use of  a particular mailing address, as specified in the contract, to be a condition precedent to a valid termination.  The court in that case concluded that the parties did not intend the use of the particular address to be a condition of valid termination because the contract did not locate "the address requirement next to the notice period in the paragraph defining termination rights. [I]f the address was an essential term of the bargain, the parties would have made notice sent to that address the exclusive means of providing written notice, rather than just one method among many...." Id. at 23. The court went on to say that the "overall structure of the Agreement supports our conclusion that the parties intended the mailing address as a convenient means of effectuating delivery and not as a condition precedent to valid termination. Id.

In the instant case, the parties specifically added to Article 5.3 an address where notices had to be sent and the manner in which they were to be sent, i.e., via certified mail. This was repeated again in Article 14.2 where a specific address for receipt of notices was stated. Likewise, Articles 8.6 and 13 expressly mention that notice shall be given as provided for in

Article 14.2. The construction of the Contract at the center of this dispute differs from the contract at issue in University Emergency sufficiently so that the two cases are distinguishable.

Moreover, the argument of 'complied with the spirit of the notice provision' was addressed by the U.S. District Court for the District of Puerto Rico in the case of Myers v. Silva, 208 F.Supp.2d 155 (D.P.R. 2002), which had similar facts as our case. In Myers, the parties to a contract specified the manner in which notice would be provided in the event of a default, i.e., in writing, sent via certified mail, return receipt requested, with thirty (30) days notice to cure the breach. Defendant Silva argued that the letter, which did not provide the notice as specifically spelled out in the contract, complied with the spirit, if not the letter, of the contract. To that argument, the court in Myers found that:

> Such construction may [ ] be inconsistent with the guidelines on hermeneutics provided by the Civil Code which requires that '[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded under the pretext of fulfilling the spirit thereof.' Therefore, having established that the Agreement is the law of the case, and because its terms are clear and unambiguous, the letter of the contract must be followed, not merely its spirit.

Id. at 160, Santiago v. Becton Dickinson & Co., S.A., 571 F.Supp. 904, 913 (D.P.R. 1983) (citing 31 P.R. Laws Ann. § 14).

One last point on this issue. The court in University Emergency, 197 F.3d at 19, stated that the effectiveness of the notice of termination was being analyzed pursuant to the law of Rhode Island, whereas, Article 14.9 in our Contract requires that it be interpreted exclusively in conformity with the applicable laws of the Commonwealth of Puerto Rico.

In the instant case, MEDHS and the Municipality agreed that in order to terminate the agreement for nonpayment of rent or other monies owed, the Municipality had to give written notice, sent via certified mail to a specific address that was set forth in the Contract. If the termination of the Contract was for any other reason, then written notice was to be sent via certified mail to the address specified in Article 14.2. Given that these requirements are not contrary to law, morals or public order, they are the law in this case. Hennes v. Sun Life Assur. Co. of Canada, 291 F.Supp. 670, 673 (D.P.R. 1968). As such, neither the December 8, 2009

notice of default letter, nor the January 28, 2010 Contract termination letter complied with the specific notice provisions of Articles 5.3 and 14.2. Therefore, this court finds that the attempted termination of the Contract by the Municipality was procedurally and legally invalid.

For the sake of completeness, the court will address two additional arguments made by the parties. MMC/SISSO and the Municipality allege that breaches under Article 10.1(b) of the Contract did not require prior notice to MEDHS. According to the testimony of attorney Carlos Nieves, one of the attorneys for the Municipality and the drafter of the Contract, Article 10.1 expressly provides that any event of default will ("sera") be sufficient cause for immediate termination of the Contract. It further provides that in the event of a default, the Municipality may ("podrá") send MEDHS a notice of same. The only event of default in Article 10.1 that expressly requires a notice is the failure to pay rent or other sums of monies. Notices of breach for other events of default listed therein were discretionary by the Municipality.

In contrast, MARC/MEDHS argued that given the scope of Article 13 which laid out a series of steps to be taken by both parties in order to resolve disputes, and the good faith required by Commonwealth law,[2] a clause in the Contract allowing for termination of the same without any prior notice of an event of default from the Municipality would be an absurd interpretation of Article 10.1(b). Notwithstanding that the court agrees that such a lack of notice of a default prior to termination of a contract is unusual in general contract construction, there is no need to address this issue given our ruling that the notices sent by the Municipality did not comply with the Contract.

Another argument raised by MARC/MEDHS was that MARC was a debtor under chapter 11 of the Bankruptcy Code when the Municipality attempted to terminate the Contract by letter on January 28, 2010. In its answer filed in Adversary Proceeding number 10-00150, specifically paragraphs 12 and 14, MARC raises the issue that the termination letter violated the automatic stay provisions of 11 U.S.C. §362 and therefore, MMC's new contract with the Municipality is null and void[3] [Dkt. No. 5]. In response to an objection to the admission of the

---

[2] See BPPR v. Sunc.Talavera, 174 D.P.R. 686 ( 2008).
[3] See In re Soares, 107 F.3d 969 (1st Cir. 1997).

lease contract between MARC and MEDHS into evidence, MARC argued that under Rule 15(b)(1) of the Fed. R. Civ. P, its pleadings should be amended to allow for consideration of its argument under section 362. Even if the court were to allow an amendment of MARC's pleadings under F.R.C.P. 15(b)(1), the pleadings would be amended only as to Adversary Proceeding number 10-00150, where the plaintiff is MMC and not the Municipality. There is not a direct cause of action presently before the Court between MARC and the Municipality wherein a section 362 violation would be entertained.

## III.    CONCLUSION

Therefore, based upon the findings of fact and conclusions of law as above-stated, this Court holds that the termination notice sent to MEDHS by the Municipality was not valid or effective because it was not done in compliance with the express terms of the Contract. Judgment to be entered separate.

In San Juan, Puerto Rico, this 12th day of March, 2012.

**Brian K. Tester**
**U.S. Bankruptcy Judge**