**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 10-04905** |
| | **Chapter 11** |
| **MEDICAL EDUCATIONAL AND HEALTH SERVICES INC.** | **Adversary No. 10-00146** |
| **Debtor(s)** | |
| **MAYAGUEZ MEDICAL CENTER DR RAMON E BETANCES INC.** | |
| **Plaintiff** | |
| **vs.** | |
| **MEDICAL EDUCATIONAL AND HEALTH SERVICES INC.** | |
| **Defendant(s)** | **FILED & ENTERED ON 02/27/2015** |

## OPINION & ORDER

On February 17, 2015, the court held a hearing to consider the Debtor/Plaintiff's, Medical Educational and Health Services, Inc.'s (hereinafter "MEDHS) Application for a Permanent Injunction and Writ of Attachment. After discussing a number of legal issues in this adversary proceeding, and two others with a related set of facts — AP 10-00148 and AP 10-00150, the court denied MEDHS's request for a permanent injunction[1] and scheduled a trial to consider damages in all three adversaries. Moreover, the court agreed to adjudicate, prior to the

---

[1] The February 3, 2015 preliminary injunction Order, as modified on February 6, 2015 [Dkt. No.'s 444 and 448, expired by its own terms on February 17, 2015. All docket number entries referred to in this Opinion and Order dated February 27, 2015, pertain to adversary proceeding 10-00148.

commencement of the trial, the question of whether "specific performance" with respect to the valid contract for the Operation and Administration of the Hospital Ramón Emeterio Betances Mayaguez Medical Center (hereinafter "Contract") executed by and between MEDHS and the Municipality of Mayaguez (hereinafter "Municipality"), was available as a remedy to MEDHS.

Before the court can progress to the deliberation of MEDHS' request for specific performance, two ancillary legal questions in this case must be addressed. The first concerns the affirmation by the U.S. District Court for the District of Puerto Rico (hereinafter "District Court Case") in Case No. 12-01620(DRD), and the second is in regards to the assumption or rejection of executory contracts and unexpired leases pursuant to 11 U.S.C. § 365.

As to the former, Defendants, Municipality, Mayaguez Medical Center - Dr. Ramon Emeterio Betances (hereinafter "MMC") and the mayor of Mayaguez, Jose Guillermo Rodriguez (hereinafter "Mayor") have argued that the ruling in the District Court Case stating that the "Contract continues to be in effect" is inconsequential dicta, and is therefore not binding precedent. The court addressed this specifically in the Opinion and Order dated February 12, 2015 [Dkt. No. 454]:

> The District Court stated a result or consequence that could be logically drawn from the existence of a set of facts by the exercise of common sense and reason. Whatever the rationale, the District Court reviewed this Court's March 12, 2012 Opinion & Order under the 'standard of review' which requires that rulings of law be reviewed de novo. The District Court made a legal, not a factual, determination that the Contract continued to be in effect given the fact that it was never validly terminated. If MMC, SISSO and MEDHS (the Appellants) understood this legal conclusion to be erroneous, their sole recourse was to appeal and argue to the appellate court the reasons why they considered the lower Court's conclusion inappropriate. Although a second tier appeal followed, that appeal was voluntarily dismissed. As such, the Judgment of the District Court is now final and unappealable.

This court stands by this ruling. MEDHS Contract continues to be in effect and the Municipality

has taken no legal action[2] to terminate it following the courts determination on March 12, 2012 that "that the termination notice sent to MEDHS by the Municipality was not valid or effective because it was not done in compliance with the express terms of the Contract." [Dkt. No. 249]. The court will not delve into the legality of the contract entered into by and between the Municipality and MMC on January 29, 2010, to administer the Hospital facility except to say that its validity is suspect.

Defendants, the Municipality, the Mayor and MMC further contend that MEDHS never assumed the Contract as required by 11 U.S.C. § 365. The Defendant's refer exclusively to subsection d(4) which states as follows:

> ...     (4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease *by the earlier of*—
>
> (i) the date that is 120 days after the date of the order for relief; or
>
> (ii) the date of the entry of an order confirming a plan.
>
> (B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
>
> (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

---

[2] In the Municipality and the Mayor's Urgent Motion dated February 4, 2015 [Dkt. No. 445], one of the arguments raised by the parties is that this Court erred by jumping "to an unsupported conclusion" that the Municipality had not validly terminated the Contract following the March 12, 2012 Judgment . The parties state that "[i]ndeed, Plaintiff was personally notified of the termination in proceedings before this very Court...." The Municipality and the Mayor appear to be unaware of the protections afforded a Debtor in Possession under the Bankruptcy Code, in particular 11 U.S.C. § 362. Any action by the Municipality and/or the Mayor to terminate the Contract after the June 3, 2010 order for relief requires a specific order from this Court. It is not an "unsupported conclusion" that the docket of the legal case, to which this adversary relates, confirms that no Defendant has moved for such an order.

11 U.S.C. § 365(d)(4) (emphasis ours). The Defendants contend that the Contract falls under the time limits imposed by subsection (d)(4), and that MEDHS failed to timely assume the Contract. The result, they argue, is that the Contract is automatically deemed rejected. For reasons not fully elucidated, MMC starts tolling the 120 days from the conclusion of the District Court Case on October 6, 2014, and determines that the time to assume the Contract expired on February 3, 2015. This Court disagrees. Even assuming *arguendo* that the Contract can be deemed[3] a "lease of nonresidential real property," MEDHS timely moved to assume the Contract in their Plan of Reorganization dated October 1, 2010 [Dkt. No. 79, Section 5.5, pg. 16]. 11 U.S.C. § 1123(b)(2) allows for this assumption. There is no doubt that the Contract was assumed by MEDHS and continues to be a part of their estate.

With these two matters settled, the court now turns to the controversy surrounding MEDHS request for specific performance. Defendants, the Municipality, MMC and the Mayor filed motions addressing the issue of specific performance. See Docket Entries 445, 447, and 458. The Mayor and the Municipality advanced the notion that specific performance was barred by established state and federal case law.  MMC  joined that argument but also asserted that MEDHS's breach "precludes it, as a legal matter, from requesting specific performance. See Mora Dev. Corp. v. Sandin, 118 DPR 733, 8 P.R. Offic. Trans. 847 (1987) (referencing the *exceptio non adimpleti contractus* doctrine which states that a party to a bilateral contract that has breached its obligations cannot request specific performance); see also Alvarez v. Rivera, 165 DPR 1, 19-20 (2005)."  The court allowed MEDHS until February 17, 2015 to brief the court on this issue. Their Response to Order was timely filed at docket number 482.

---

[3] Valid legal arguments can be made that the Contract is an "executory contract" which is not subject to subsection (d)(4), but rather subsection (d)(2) which allows a debtor to assume or reject "...at any time before the confirmation of a plan...." 11 U.S.C. § 365(d)(2).

Citing to two court cases and one federal case explained in further detail below,[4] MMC argues that the Supreme Court of Puerto Rico has held that a specific performance of a contract is not available if special circumstances prevent a court from ordering that the contract be enforced. MMC enumerates as (1) a new and valid contract exists between MMC and the Municipality pursuant to which MMC has operated the Hospital for two years; (2) this Honorable Court does not have the authority to force the Municipality to re-instate a Contract that was in default when terminated, and (3) the finding that a notice of termination was not sent to a specified address does not in any way override the fact that MEDHS breached essential obligations under the Contract and that it proved incapable of administering the Hospital. As illustrated below, the legal cases cited by MMC do not support the purported "special circumstances" listed above.

The court in the case of <u>Felix A. Rodriguez, Inc. v. Bristol-Myers Co.</u>, 281 F.Supp 643 (D.P.R. 1968) provided a summary of the Supreme Court of Puerto Rico in applying and discussing Article 1077.

> Under the civil law — contrary to the common law — the fact that a plaintiff who alleges a breach of contract has an adequate remedy by way of damages does not bar him from seeking performance of the contract. The plaintiff may choose between exacting and fulfilment of the obligation or its rescission, with indemnity for damages . Section 1077, Civil Code, 1930 ed., 31 LPRA § 3052; § 1340 of the Civil Code, 31 LPRA § 3747.

The Municipality and the Mayor place a great deal of weight on the analysis provided in this case as to Section 1077 of the Civil Code. In pertinent part, the <u>Rodriguez</u> decision settled a dispute between a manufacturer and a distributor which was brought under Law No. 75 of 1964,

---

[4] <u>See</u> <u>Garcia v. World Wide Entmt. Co.</u>, 132 DPR 378, 385; 1992 P.R.-Eng. 754,802 (1992); <u>Vázquez v. Tribunal</u>, 78 DPR 744 (1955); <u>see also</u> <u>Félix A. Rodríguez, Inc. v. Bristol-Myers Co.</u>, 281 F. Supp. 643, 646 (D.P.R. 1968).

as amended, 10 LPRA § 278, et seq. The <u>Rodriguez</u> court determined that the contract in dispute was a:

> [C]ontract to 'do' ('de hacer'), which predominantly involves reciprocal personal elements and makes a close cooperation between the parties critical. On the one hand, a distributor must be concerned with the continued good name of his principal, as well as with his relationship as regards the principal in terms of credit, mutual cooperation, etc. The manufacturer or principal, however, must likewise maintain a keen interest in the personal integrity, reputation and efficiency of a distributor's standing in the community, etc. Both parties must be constantly vigilant of each other's integrity, good faith and close cooperation, and supervision ought to be a prolonged and continuous one. These elements of reciprocal personal dealings are accentuated in a case where the distributor is an exclusive representative, as it is alleged in the complaint that plaintiff here is.

<u>Id.</u> at 646, 647.

Under the civil law of the Commonwealth of Puerto Rico, specific performance of contracts will be granted in proper case. 31 L.P.R.A. § 3052; 32 L.P.R.A. § 3524 ; Rules of Civil Procedure, rule 72 and (1), 32 L.P.R.A. Appendix. This Court is clear that §§ 1077 and 1340 of the Civil Code do not create an automatic and absolute right to performance of a contract in all cases. <u>Vazquez v. Superior Court</u>, 78 P.R.R. 707, 712 (1955). However, the Municipality and the Mayor's reliance on the <u>Rodriguez</u> case is misplaced. Cases involving manufacturers and distributers fall under Law No. 75 of 1964, as amended. Any determination reached in <u>Rodriguez</u> is inapplicable to the case at hand because it is distinguishable from the controversy presently before us. The facts and the controlling law of Rodriguez alone make it inapposite.

The other cases cited by the Defendants, <u>Nunez v. Soto Nussa</u>,[5] 14 D.P.R. 199 (1908);

---

[5]This case was a writ of certiorari requested by a professional singer, Laura Nunez against a judge of the District of Mayaguez, who ruled against Ms. Nunez in a state court dispute involving Enrique Zimmerman, administrator of an artistic group — Empresa Teatral. For reasons not stated in the Opinion a preliminary injunction was in place against Ms. Nunez. The Mayaguez judge determined that the injunction had been violated and sentenced Ms. Nunez to sixty days incarceration and a fine of $300.00.

<u>Garcia v. World Wide Entmt. Co.</u>,[6] 132 D.P.R. 378, 1992 P.R.-Eng. 754,802, P.R. Offic Trans. (1992); P.R. Offic. Trans; and <u>Vazquez v. Tribunal Superior y San Migual y Cia.</u>,[7] 78 D.P.R. 744 (1955) are distinguishable, and therefore not relevant to our analysis, because the first two involve personal contracts for artistic representation, and the last one is a corporate dispute regarding the formation of a new corporate entity. There are no factors cited by the Defendants that would characterize the relationship between MEDHS and the Municipality as one containing elements that would be considered to be 'personalisimo' as cited in <u>Rodriguez</u>. Moreover, none of the Defendants have provided relevant case law that would turn the three factors specified by MMC into "special circumstances" that would deny MEDHS their request for specific performance.[8]

In sum, the court determines that the Contract is legally valid and binding on the signatory parties; that MEDHS has timely moved to assume the Contract in accordance with applicable sections of the Bankruptcy Code; and that therefore MEDHS is entitled to the

---

[6] This case was a dispute between the plantiffs, parents of Angel Luis Garcia, a former member of the musical group Menudo and World Wide Entertainment Company which was contracted to direct with exclusive character Garcia's artistic career as a solo singer. Plaintiff's alleged the contract was void because they were contrary to law, morals and public policy. As second cause of action, plaintiffs alleged that defendants had physically abused and sexually harassed the minor.

[7] This case which primarily dealt with the formation of corporations under Commonwealth law was a dispute between an individual, Julian Vazquez and San Miguel & Cia, Inc. who contracted to form a corporation whereby each party would own $100,000 in shares and Mr. Vazquez would serve as General Manager.

[8] In addition to this argument and citing <u>Mora Dev. Corp. v. Sandin</u>, 118 DPR 733, 8 P.R. Offic. Trans. 847, MMC avers that MEDHS cannot request specific performance given the laundry list of defaults it had incurred before the Municipality terminated its contract, regardless of the manner in which the termination notice was effectuated. <u>Mora Dev. Corp</u> deals with an unlawful detainer proceeding against tenants receiving federal housing rental assistance program known as Sec. 8 of the Housing and Community Development Act, 42 U.S.C. § 1437f. The holding in this case stated that "when a Section 8 landlord does not fulfill his obligation to adjust the rent by statutory, regulatory and contractual mandate, he cannot seek rescission of the lease in those cases where the tenant has fully complied with his obligation to notify a change in the economic or family situation." <u>Id.</u> at 861. Suffice it to say that this Court fails to see the applicability of this holding to MEDHS request for specific performance.

remedies available under Section 1077 of the Civil Code. MEDHS has made clear their intent to specifically perform under the Contract and has requested damages, including punitive damages. The trial scheduled to commence on March 2, 2015 shall be limited to the proving of these damages. Any evidence of breach presented by Defendant's the Municipality, the Mayor and MMC shall be confined in its relevance to how they off-set or mitigate the total amount in damages due MEDHS as determined by the court.

SO ORDERED

San Juan, Puerto Rico, this 27 day of February, 2015.


Brian K. Tester
U.S. Bankruptcy Judge